STATE, SAMUEL WOOD ET AL., PROSECUTORS, v. THE
STATE OF NEW JERSEY.

1. To constitute a combination a conspiracy, it must be corrupt.
2. An indictment against members of a board of chosen freeholders for
   combining to vote a sum of money out of the county funds to a third
   person, but which did not charge that the confederation was corrupt,
   or that the third person was, to the knowledge of the defendants, dis-
   entitled to the money, is bad.

This writ brings up an indictment for conspiracy.

Argued at June Term, 1885, before Justices KNAPP and
REED.

For the prosecutors, *T. B. Harned* and *C. G. Garrison.*

For the state, *A. Hugg* and *R. S. Jenkins.*

The opinion of the court was delivered by

REED, J. The indictment before us charges that the
prosecutors and certain others were members of the board of
chosen freeholders of the county of Camden, and, having the
control of the funds of said county, at a lawful meeting of
said board did unlawfully vote for, order and direct the pay-
ment of $160 to one Morgan by the county collector, for his
services rendered in and about the county clerk's office, and
thereby did cause the said Morgan to get into his possession,
unlawfully, the said sum out of the funds of the county of
Camden.

And further, that the said defendants were public officers,
namely, members of the board of chosen freeholders of Cam-
den, having control and management of the funds of the
county of Camden, being persons of evil minds, &c., together
with divers other evil-disposed persons, whose names are un-

known, wickedly devising and intending to unlawfully obtain from the treasury and funds of the said county the sum of $640, unlawfully did conspire, combine, confederate and agree together, between and among themselves, to obtain, acquire and get into the hands of the said Eli B. Morgan, out of the funds of said county, the said sum ; that in pursuance of the last-mentioned conspiracy, combination, confederation and agreement, the said defendants, well knowing that the said Morgan was desirous of obtaining said sum out of the treasury and funds of said county, did vote for the following resolution : "*Resolved,* That the said Eli Morgan be paid the sum of $160 per month by the county collector, for his services rendered in and about the county clerk's office, said salary to commence June 1st, 1884 ; " that the said resolution was adopted and the said Morgan did obtain and get into his possession the said sum of $640 out of the treasury and funds of the county of Camden ; that the said conspiracy, &c., were then and there made, done and perpetrated by the defendants in violation of their duty and the trust reposed in them, and of their oaths as members of the board of chosen freeholders, to the great damage of the county of Camden.

The above is the substance of the indictment, containing all the material charges therein, without much of the verbiage attending criminal pleading.

The theory which underlies this indictment presents a novel phase in the law of criminal conspiracy. Stripped of all verbiage, the only view from which this indictment can be supported is this, namely, that every caucus of members of a legislative body at which concerted action to vote for an object which is illegal is resolved upon, is a conspiracy. The novelty of this application appears from the fact that I have been unable to find any case in the books of reports in which this aspect of the law of conspiracy has been discussed. I might, perhaps, except one case bearing upon the liability of members of a public body for an illegal combination in regard to their official conduct. This is the case of *Commonwealth* v. *Callaghan,* 2 *Va. Cas.* 460. In this case a combi-

nation between two justices of the peace, in whom was the power of appointment of commissioners, that the first justice should vote for a certain third person as commissioner in consideration that the second justice should vote for a certain other person as clerk.

This was held, when executed, to be indictable, and it seems from the opinion to have been regarded as indictable as an illegal confederation, without regard to the execution of the project. The notion upon which it was held a conspiracy was that the combination was to accomplish an object inimical to the interest of the public, namely, to appoint men to public offices upon some ground other than their fitness for the position. This doctrine would seem to fix upon all parties to an agreement which is void as against public policy, the character of conspirators, and the field which such a rule would cover is so extensive that it is not remarkable that the case stands alone and has been cited without commendation, if not with dissent, by such authors as Dr. Wharton. That case, as it stands, however, is analogous to the present case in that the first deals with the conduct of members of a body to whom is confided the appointment of public officers, and this case deals with the action of members who have in charge the moneys of the public. In regard to the latter aspect of this question, while it may be observed that the vast and vague field now covered by the law of criminal conspiracy needs circumscribing rather than expanding, yet a case is conceivable where a combination of members of such a body as a board of chosen freeholders, the object of which is to defraud the county by their official votes, may be criminal.

It may not be easy to exactly define by a general formula what elements of fact are essential to constitute such a combination a criminal conspiracy, but it may be safely said that the motives of the confederates must be corrupt or no criminality can attach to such a confederation. This remark is illustrated by the case of *People of New York* v. *Powell et al.*, 63 *N. Y.* 88. The defendants were commissioners of charities of the county of Kings, and were indicted for conspiring

together to omit, refuse and neglect to advertise for supplies as required by statute. Upon the trial, the judge charged that without regard to the defendants' ignorance of the existence of the statute, the agreement to violate the act, followed by conduct in furtherance of the agreement, constituted a conspiracy. This was held error, the court remarking that it was not enough that the act which was the object of the conspiracy, was prohibited.

The confederation must be corrupt. The actual criminal intention belongs to the definition of conspiracy and must be shown to justify a conviction.

On turning to the indictment, the substance of which has been set forth, no corrupt combination is charged. The corrupt purpose of cheating the county is not set forth. In the forms of indictment for a conspiracy to cheat, the word "cheat" implies a corrupt act. If the purposes of the combination had been set out so that it appeared that the design was to defraud the county, the mere failure to use the word "corruptly" in charging the combination, would not have been material.

But neither is the confederacy charged to have been corrupt, nor do the purposes and acts of the confederates, as set forth, show a corrupt purpose. The charge is that they unlawfully conspired to get into the hands of one Morgan a sum of money. It does not say that Morgan was not entitled to a sum of money. Nor does it charge that the defendants knew that he was not entitled to it. The charge that they wickedly devising to unlawfully obtain this money, &c., is meaningless, when the details of the conspiracy are set forth, by which it does not appear that the person who was to receive the fund was disentitled to it, or that the defendants supposed that he was without right to be so paid.

The frame of this indictment is entirely different from those in which a general conspiracy to cheat by false tokens is charged. This generality of charging is now held to be sufficient. *Rex* v. *Gill*, 2 *B. & A.* 204; *State* v. *Young and Stainsby*, 8 *Vroom* 184; 2 *Whart. Prec. of Indict.* 607.

Edgar v. Anness.

Even if such a charge were followed by details of the method in which the alleged cheat was to have been accomplished, and it appeared from such detailed statement that the object of the combination did not involve a cheat at all, the indictment would be bad.

There is in this indictment a failure to charge a corrupt purpose in entering into the agreement, without which it is not a conspiracy.

Two other similar indictments were before us, and the motions to quash them and the present one were heard together. The same fault which invalidates this appears in them, and all three should be quashed.